## SUPREME COURT.

JERONEMUS H. UNDERHILL, respondent agt. THE NORTH AMERICAN KEROSENE GAS LIGHT COMPANY, appellants.

Where the defendants, by a specification and drawings, dated the 4th of January, 1859, invited proposals for the construction of twenty-seven meerschaums, to be constructed thereunder of brick, deliverabe at different times prior to the first day of July, 1859—specifying that eight (the remainder of the twenty-seven) were to be delivered on the first day of July, and containing a clause "*Any number at our option ;*" also, "in addition to the above, we wish to estimate for the same number of iron meerschaums to be delivered as above," giving a description of the latter;

And the plaintiff proposed, in writing, to construct twenty-six or twenty-seven of the brick meerschaums for $1,650 each, or twenty-six or twenty-seven of the iron meerschaums for $1,850, in accordance with the plans of January 4, 1859," all the above to be in accordance as first plan and specifications, and to be delivered at such dates, and in such numbers, as the company may specify, in the next sixty-five days." Which offer was accepted in writing by the company. The plaintiff, after constructing seven meerschaums, was prohibited by the defendants from manufacturing any more, as they had failed to pay, and had become insolvent :

*Held,* that the defendants, by expressing "any number at our option," would seem to reserve the right to *increase and not diminish* the whole number of meerschaums to be manufactured :

*Held also,* that the defendants, having accepted and assented to the plaintiff's proposition, and the terms named, which varied their proposal, were liable for the whole number of meerschaums (27).

*Held also,* that the correct rule of damages was to allow the plaintiff the *actual profit* on each meerschaum (20) left unmanufactured.

*New York General Term, November, 1865.*

Underhill agt. The North American Kerosene Gas Light Co.

*Before* INGRAHAM, *P. J.*, LEONARD *and* BARNARD, *Justices.*

THIS case came up on appeal from a judgment entered in favor of the plaintiff for $17,479, in October, 1863. It had been tried twice before a referee, and twice on appeal argued before the general term.

The facts of the case were as follows:

On the 4th of January, 1859, the company desired estimates on some pipes for the manufacture of kerosene oil, called meerschaums, which they proposed to build of iron or brick. For that purpose a specification and some drawings were prepared for the proposals of mechanics. In those specifications the company desired twenty-seven meerschaums to be constructed thereunder, of brick, deliverable at different times prior to the first day of July, 1859. After specifying that eight (the remainder of the twenty-seven) were to be delivered on the first day of July, the specifications contained a clause, "any number at our option," and then continued: "In addition to the above we wish estimates for the same number of iron meerschaums to be delivered as above." It then proceeded with a description of the iron ones so desired. The plaintiff, as one of the mechanics to whom these plans and specifications were delivered for proposal, concluded to make an estimate for twenty-six or twenty-seven of the meerschaums. On the 10th January, 1859, he wrote a proposal to the company to the effect that he would contract to construct twenty-six or twenty-seven of the brick meerschaums for $1,650 each, or twenty-six or twenty-seven of the iron meerschaums for $1,850.

They were to be constructed in accordance with the first plan and specifications, dated January 4th, 1859, and to be delivered at such dates, and in such numbers, as the company might specify in the next sixty-five days. On the the same day, the secretary and acting business man of the company, assents to the proposition of the plaintiff, and wrote to him to that effect.

The plaintiff constructed seven meerschaums, each of twenty-five tons capacity, and made one of one hundred

tons as an experiment.· The company failed subsequently, did not pay their notes, and went into insolvency. The plaintiff was left with a large amount of manufactured iron on hand, and had gone to great expense to carry out the contract. The cost of each meerschaum was $1,020, which allowed to .the plaintiff a profit of $830 on each machine, amounting in all, on the twenty left unmanufactured, to $16,600. The plaintiff brought his action to recover those damages. On the first trial the referee found all the facts in favor of the plaintiff, excepting he held that by the writ-ten memorandum, subjoined to the specification, the. option of any number of the meerschaums to be delivered was reserved to the company, and constituted one of .the terms of the contract; and in stopping the work the. defendants did what they had a right to do, and were not responsible for the damages sustained by the plaintiff on the work not executed but contracted to be done. From this report the plaintiff took an appeal to the general term, which in the February term, · 1862, reversed the judgment, holding that the proposal of the plaintiff, in making his estimate to the company to build twenty-six or twenty-seven meerschaums and in adding the clause " all the above to be in accordance with the first plan and specification dated 4th inst., and to be delivered at such dates and in such numbers as you may specify within the next sixty-five days," proposed a variance from the terms named by the defendants in respect to the option. That the offer was to build the whole number men-tioned, giving the defendants sixty-five days with which they are required to specify the dates and numbers of the deliv-eries. To this proposition made by the plaintiff, the defend-ants reply in writing on the same day, and "assent to the proposition and terms therein made." This, therefore, con-stituted an agreement for twenty-seven meerschaums; the variation in the contract proposed by the plaintiff was assented to by the defendants. After the reversal, the cause was tried a second time before the same referee, and on the new trial much testimony was taken, and a judgment was rendered in favor of the plaintiff for $16,600, on which judg-

Underhill agt. The North American Kerosene Gas Light Co.

ment was entered for the amount before stated. From this latter judgment the defendant took an appeal to the general term, and the cause was again argued during the present term.

SAMUEL E. LYON, *for appellants.*
D. McMAHON, *for respondent.*

*By the court,* LEONARD, J. The contract between the parties remains substantially as it appeared when the case was before the general term on a former occasion (36 *Barb. R.* 354, 356). The specification or writing whereby the gas company invite proposals, is rather indefinite as to the option which they claim. Still I incline to the opinion that the option as expressed in the said invitation, reserves the right to increase and not to diminish the whole number of meerschaums to be manufactured. The gas company name five dates or times for the delivery of a definite number, amounting in all to twenty-seven, and then invite an estimate for " the *same number* of iron meerschaums, to be delivered as above." There is nothing to indicate that they wished an option to take a less number. Perhaps it was designed to secure an option to change the number deliverable at the several dates specified. Whatever meaning the gas company may have intended to attach to the option, the plaintiff in his answer makes it specific and certain.

He makes his estimate for twenty-six or twenty-seven meerschaums of the two different descriptions required, and then adds, " *all the above* to be in accordance as first plan and specifications, and to be delivered at such dates and in such numbers as you may specify within the next sixty-five days."

Here the option relates only to the dates and numbers of the several deliveries. There is no option as to the whole number, except that it is not stated whether there shall be twenty-six or twenty-seven. The defendants assent to the proposition and terms named. All the other questions related to the facts as found by the referee, so far as anything was argued before us. The evidence sustains the facts as

found, in my opinion.  The chief question was whether the parties agreed to cancel or abandon this contract.  The agents of the gas company testify to facts tending to show that the plaintiff consented to cancel or abandon the contract, in consideration that the company would give him whatever other work they might have to be done, and that the company furnished the plaintiff the work.

The plaintiff puts an entirely different construction upon the new agreement.  According to his evidence, there were some propositions, never amounting, however, to an agreement, to change the written contract.  No new agreement was ever reduced to writing; and the old contract in writing was never surrendered, although the plaintiff was asked to do so.

This last fact has a strong bearing on the subject.  If a new agreement had been made, it seems most probable that the old one in writing would have been actually canceled or surrendered.

The rule of damages is correct.

The judgment should be affirmed, with costs.